FILED

2010 Mar-09  AM 10:31
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT FOR THE NORTHERN DISTRICT OF ALABAMA NORTHEASTERN DIVISION

JAMES MICHAEL MORGAN,    )

    PLAINTIFF,    )

VS.    )    5:08-cv-158-JHH

MICHAEL J. ASTRUE,    )
COMMISSIONER OF
SOCIAL SECURITY,    )

    DEFENDANT.    )

## MEMORANDUM OF DECISION

Plaintiff James Michael Morgan brings this action pursuant to Sections 205(g) and 1631(c) of the Social Security Act, 42 U.S.C. §§ 405(g) and 1383(c), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his application for Supplemental Security Income ("SSI") under Title XVI of the Social Security Act.[1]  For the reasons set forth below, the decision is due to be affirmed.

---

[1] In general, the legal standards are the same regardless of whether a claimant seeks disability income benefits (DIB) or supplemental security income.  However, separate, parallel statutes and regulations exist for DIB and SSI claims.  Therefore, citations in this opinion should be considered to refer to the appropriate parallel provision as context dictates.  The same applies to citations of statutes or regulations found in quoted court decisions.  See Borden v. Astrue, 494 F. Supp.2d 1278, 1280 n.1 (N.D. Ala. 2007).

## I. PROCEDURAL HISTORY

Plaintiff filed his application for SSI on August 26, 2005, alleging a disability onset date of December 7, 2004.  (R. 21, 97.)  Plaintiff's application was denied initially on November 30, 2005, (r. 85), and on January 4, 2006, Plaintiff timely filed a request for a hearing.  (R. 21.)  Plaintiff's request was granted, and a hearing was held before an Administrative Law Judge ("ALJ") on February 20, 2007, in Cullman, Alabama.  (R. 346-80.)  Plaintiff and Vocational Expert ("VE") Karen Vessel provided testimony at the hearing.  (R. 348-79.)

In the May 7, 2002 decision, the ALJ determined that Plaintiff was not eligible for SSI because he was not under a "disability," as defined by the Act, at any time before the date of decision.  (R. 32.)  Thereafter, on December 3, 2006, Plaintiff requested review of the ALJ decision by the Appeals Council.  (R. 10-17B.)  After the Appeals Council denied Plaintiff's request for review on November 30, 2007, (R. 4-6), that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

At the time of the hearing, Plaintiff was forty-seven years old, with a tenth grade education.  (R. 351-52.)  Plaintiff has past relevant work experience as a tractor trailer driver (semi-skilled, medium exertion level), delivery truck driver (semi-skilled, medium exertion level), auto mechanic (skilled, medium exertion level), and

2

carpenter (skilled, medium exertion level).  Plaintiff claims that since his alleged onset date of December 7, 2004, he has been unable to work due to disabling back pain as well as a myriad of other conditions.

Plaintiff's problems began in 1987 when he suffered an on-the job accident where he fell twenty-one (21) feet from a building and hit the concrete head first.  (R. 357, 164.)  The fall busted both of his ear drums and his left eye socket.  (R. 357.) He had surgery to repair one ear drum and his left eye, and was out of work for two years.  (R. 357.)  When he went back to work as a mechanic, he began having back and neck problems as a result of the fall, but he tolerated the pain and continued to work.  (R. 357-58.)  After a series of different jobs, he went back to working as a truck drier in 2004 and injured his back on December 7, 2004 while "jerking on the lever trying to unlock the tandems on the trailer."  (R. 140, 358.)

At the hearing, Plaintiff explained that he is not able to work because he has "too much back pain" which prevents him from standing, bending over, sitting, and/or lifting.  (R.353.)  The pain occurs every day.  (R. 359.)  He testified that he cannot sit all day because it hurts and that he has to get up and move around at times, but at other times he has to lay down to "get all the pressure off [his] lower back to where the pain will ease up."  (R. 354.)  He stops and elevates his feet seven or eight times a day, in a recliner or bed, to relieve the pain.  (R. 366.)  Plaintiff stated that when he

3

elevates his feet, the pain does not go away, but it becomes tolerable.  (R. 359.)  He stated that sometimes the pain is so severe that he cannot concentrate.  (R. 365.)  He described the pain as follows: "Left leg gets dumb and tingles like it's asleep, sharp throbbing pain down into my foot, from my back down my leg into my foot." (R. 366.)

During the day, Plaintiff stated that he "set[s] [sic] around the house or lay[s] in a recliner, [and] move[s] around."  (R. 354.)  As far as chores, Plaintiff sometimes washes the dishes, but after two to five minutes, he has to take a break.  (R. 354.)  He stated that he cannot mow the grass,[2] or drive a car more than "five, six, seven miles at a time" until he has to get out.  (R. 355-56.)  He testified that he has lost the grip in his hands and that he "tried to get a gallon of milk out of the buggy and sit up on the counter and dropped it."  (R. 363.)

In addition to the back pain, Plaintiff testified that he has problems with his hearing, from the accident in 1987, and the only way to correct those problems is through surgery.[3]  (R. 360.)  He also has experiences swelling in his legs, knees ankles and feet, and takes a "water pill" to help manage the swelling.  (R. 360.)

---

[2] Plaintiff testified that he has a sitting lawnmower and the vibration from the seat hurts his back too much.  (R. 363.)

[3] Plaintiff does not have any health insurance.  (R. 360.)

4

Plaintiff testified that he has trouble breathing and is on an inhaler; the warmer it is outside, the harder it is for him to breathe.  (R. 361.)

## II.  THE DECISION OF THE ALJ

Determination of disability under the Social Security Act requires a five step analysis.  See 20 C.F.R. § 404.1520.  First, the Commissioner determines whether the claimant is working.  Id.  Second, the Commissioner determines whether the claimant has an impairment which prevents the performance of basic work activities.  Id. Third, the Commissioner determines whether claimant's impairment meets or equals an impairment listed in Appendix 1 of Part 404 of the regulations.  Id.  Fourth, the Commissioner determines whether the claimant's residual functional capacity can meet the physical and mental demands of past work.  Id.  The claimant's residual functional capacity is what the claimant can do despite his impairment.  Finally, the Commissioner determines whether the claimant's age, education, and past work experience prevent the performance of any other work.  Id.  In making this final determination, the Commissioner will use the Medical-Vocational guidelines in Appendix 2 of part 404 of the regulations when all of the claimant's vocational factors and the residual functional capacity are the same as the criteria listed in the Appendix.  If the Commissioner finds that the claimant is disabled or not disabled at any step in this procedure, the Commissioner will not review the claim any further.

5

The court recognizes that "the ultimate burden of proving disability is on the claimant" and that "the claimant must establish a prima facie case by demonstrating that he can no longer perform his former employment." Freeman v. Schweiker, 681 F.2d 727, 729 (11th Cir. 1982) (other citations omitted).   Once plaintiff shows that he can no longer perform his past employment, "the burden then shifts to the [Commissioner] to establish that the claimant can perform other substantial gainful employment." Id.

The ALJ found that the plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 7, 2004.  (R. 23.)   He also found that, during the relevant time period, Plaintiff had the following medically determinable impairments, which he deemed to be "severe": lumbar strain and sprain with left-sided radicular pain; sacroiliac dysfunction; chronic obstructive pulmonary disease; hypertension; hyperlipids; and chronic otitis media status post left myringotomy and tube placement.[4]  (R. 23.)   Nevertheless, he determined that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the criteria of an impairment listed at 20 C.F.R. pt. 404, subpt. P, app. 1.  (R. 24.) According to the ALJ, Plaintiff's subjective complaints concerning his alleged

---

[4] Although Plaintiff alleged disability in part due to depression, the ALJ concluded that his allegations did not give rise to a medically determinable impairment.  (R. 23.)  This finding is not challenged by Plaintiff.

impairments and their impact on his ability to work are not fully credible due to the degree of inconsistency with the medical evidence established in the record. (R. 24-31.) Thus, the ALJ found that Plaintiff has retained the physical residual functional capacity ("RFC") to perform less than a full range of medium work. (R. 24.) In making this finding, the ALJ specifically referenced Plaintiff's exertional abilities as assessed by Dr. Keith Anderson, an examining physician and rehabilitation specialist. (R. 24.) Dr. Anderson's report stated that in an eight-hour workday, the Plaintiff could occasionally[5] lift 50 pounds and frequently[6] lift 25 pounds (floor to knuckle, knuckle to shoulder, shoulder and above); occasionally carry 20 pounds and frequently carry 10 pounds; occasionally push and pull 80 pounds and frequently push and pull 40 pounds; occasionally walk; occasionally climb ladders; frequently stoop; frequently sit; and frequently stand. Additionally, Plaintiff is restricted from balancing, kneeling and crouching. (R. 24.)

The ALJ sought testimony from VE Karen Vessels at the administrative hearing, and he posed several hypothetical questions to Vessels regarding different scenarios of functional capacity. (R. 369-73.) With Vessel's help, the ALJ determined that Plaintiff is capable of performing his past relevant work as a truck

---

[5] Occasionally is define as up to one-third of an eight-hour workday. (R. 24.)

[6] Frequently is defined as up to two-thirds of an eight-hour workday. (R. 24.)

drivers, as well as a significant number of unskilled, light jobs in the national economy, including cashier II, machine operator (printing), and assembler.  (R. 31.) Accordingly, the ALJ found that the plaintiff was not under a disability, as defined by the Act, at any time through the date of the decision.  (R. 31-32.)

## III. STANDARD OF REVIEW

The only issues before this court are whether the record reveals substantial evidence to sustain the decision of the ALJ, see 42 U.S.C. § 405(g); Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005), and whether the correct legal standards were applied.  Lamb v. Bowen, 847 F.2d 698, 701 (11th Cir. 1988);  Chester v. Bowen, 792 F.2d 129, 131 (11th Cir. 1986).  Sections 405(g) and 1383(c) mandate that the Commissioner's findings are conclusive if supported by "substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990).  The district court may not reconsider the facts, reevaluate the evidence, or substitute its judgment for that of the Commissioner; instead, it must review the final decision as a whole and determine if the decision is reasonable and supported by substantial evidence.  See id. (citing Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

Substantial evidence falls somewhere between a scintilla and a preponderance of evidence.   Dyer, 395 F.3d at 1210 (citing Hale v. Bowen, 831 F.2d 1007, 1011 (11th Cir. 1987)).  "It is such relevant evidence as a reasonable person would accept

as adequate to support a conclusion." <u>Martin</u>, 894 F.2d at 1529 (quoting <u>Bloodsworth</u>, 703 F.2d at 1239) (other citations omitted). If supported by substantial evidence, the Commissioner's factual findings must be affirmed even if the evidence preponderates against the Commissioner's findings. <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004). While the court acknowledges that judicial review of the findings of the ALJ is limited in scope, the court also notes that review "does not yield automatic affirmance.." <u>Lamb</u>, 847 F.2d at 701.

## IV.  PLAINTIFF'S ARGUMENT FOR REMAND OR REVERSAL

The plaintiff seeks to have the ALJ's decision, which became the final decision of the Commissioner following the denial of review by the Appeals Council, reversed, or in the alternative, remanded for further consideration. Plaintiff first argues that "[t]he ALJ erred in improperly applying the standards for evaluating claimant's reports of disabling symptoms and failed to follow Social Security Ruling 96-7p."[7] (Doc. #5 at 2.) Second, Plaintiff contends that "[n]ew evidence submitted to the Appeals Council requires remand for consideration of that evidence and further

---

[7] Social Security Ruling 96-7p states that an ALJ's decision to discount a claimant's credibility "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." Social Security Ruling 96-7p, 1996 WL 374186 (July 2, 1996).

development." (Id.)  Against the backdrop of the applicable standards, the court rejects Plaintiff's request for remand and/or reversal for the following reasons.

   *A.  Substantial Evidence Supports the Decision of the ALJ.*

   Although Plaintiff entitles his argument as addressing only his subjective complaints of pain, his brief goes beyond this argument to the broader argument whether substantial evidence supports the decision of the ALJ. (See Doc.#5 at 3-32.) As such, the court examines all facets of the argument made by Plaintiff below.[8]

      1. Evaluation of Plaintiff's Subjective Complaints of Pain Under the Pain Standard.

   Plaintiff contends that when determining his ability to work, the ALJ failed to appropriately evaluate his alleged pain and subjective symptoms in light of the pain standard.  (Doc. #5 at 3-32.)  It is axiomatic that the Act and its related regulations provide that a claimant's statements about pain or other symptoms will not alone establish disability. 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 416.929.  Rather, medical signs and laboratory findings must be present to show a medical impairment that could reasonably be expected to produce the symptoms alleged.  Holt v. Sullivan, 921

_____

   [8] Throughout Plaintiff's brief, Plaintiff states that the ALJ found him not disabled at step five by exclusively relying on the Medical-Vocational Guidelines ("the Grids").  (See Doc. #5 at 3-4, 9, 10-11, 42.)  These statements are not supported by the record.  Although the ALJ indicated that he used the Grids as a framework in determining whether Plaintiff could perform a significant number of light jobs (r. 31), the ALJ explicitly relied on the testimony of the VE to find that Plaintiff was capable of performing his past relevant work as well as a significant number of light jobs in the national economy.  (R. 31, 370.)

F.2d 1221, 1223 (11th Cir. 1991).

When, as here, a claimant alleges disability through subjective complaints of pain or other symptoms, the Eleventh Circuit's "pain standard" for evaluating these symptoms requires: (1) evidence of an underlying medical condition, and either (2) objective medical evidence confirming the severity of the alleged pain arising from that condition, or (3) that the objectively determined medical condition is of such severity that it can reasonably be expected to cause the alleged pain.  See 20 C.F.R. § 404.1529; Foote v. Chater, 67 F.3d 1553, 1560 (11th Cir. 1995); Holt, 921 F.2d at 1223; Landry v. Heckler, 782 F.2d 1551, 1553 (11th Cir. 1986).  If the ALJ fails to credit a claimant's pain testimony, she must articulate reasons for that decision. 42 U.S.C. § 423(d)(5)(A).

After the application of the three-pronged pain standard, Eleventh Circuit jurisprudence requires a secondary inquiry, which evaluates the severity, intensity, and persistence of the pain and the symptoms a claimant actually possesses.  Indeed, there is a difference between meeting the judicially created pain standard and having disabling pain; meeting the pain standard is merely a threshold test to determine whether a claimant's subjective testimony should even be considered at all to determine the severity of that pain.  See 20 C.F.R. § 416.929(b) (2006); Marbury v. Sullivan, 957 F.2d 837, 839 (11th Cir. 1992) ("The Secretary must consider a

11

claimant's subjective testimony of pain if [the pain standard is met]."). After considering a claimant's complaints of pain, an ALJ may then "reject them as not creditable." Marbury, 957 F.2d at 839. Although a reversal is warranted if the ALJ's decision contains no indication that the three-part pain standard was properly applied, Holt, 921 F.2d at 1223, no "magic language" is required and no case citations are mandatory, Wilson v. Barnhart, 284 F.3d 1219, 1225-26 (11th Cir. 2002) (holding that an ALJ's mere reference to 20 C.F.R. § 404.1529, along with a discussion of the relevant evidence, demonstrates the ALJ properly applied the pain standard).

Here, the court finds that the ALJ's analysis comports with the requirements of the pain standard for evaluating Plaintiff's subjective complaints. The ALJ cited to the law outlining the pain standard and considered all of Plaintiff's subjective complaints in light of the steps outlined there-in. (R. 24-31.) The ALJ determined that although Plaintiff does have some underlying medical conditions that relate to his pain allegations, his statements concerning the pain caused by those conditions and its impact on his ability to work are not entirely credible. (Id.) In so finding, the ALJ conducted a thorough review of the medical evidence of record and determined that Plaintiff's subjective complaints were not consistent with the objective evidence. The ALJ relied upon the following evidence to support his finding regarding Plaintiff's subjective complaint of pain: (1) inconsistent statements made by the

12

Plaintiff, including Plaintiff's statements regarding his daily activities, reported pain level to his doctors; (2) Plaintiff's lack of use of pain medication; (3) Plaintiff's lack of effort and attempt to appear more limited during his functional capacity evaluations; (4) the lack of corroboration of Plaintiff's statements in the medical records, including the clinical and diagnostic findings; and (5) Plaintiff's lackluster motivation for regular employment and indication that Plaintiff did not return to work because his then-employer did not have a light-duty job.  (R. 28-31.)

### a.  Plaintiff's Complaints of Back Pain

More specifically, the ALJ found that Plaintiff's "testimony of 7-8/10 constant back pain is not consistent with the record which shows x-ray evidence of only mild findings with no evidence of herniation, stenosis, or impingement or with his own statements in the record."  (R. 25.)    He noted a December 2004 MRI that showed minimal disc bulge at L4-5 with no herniation, damage to the spinal canal or bone marrow signal.  (R. 25, 176, 180.)  Similarly, a March 2005 CT myelogram found only mild annular bulging at L4-5 and L5-S1 that produced no significant mass effect on the spinal canal or nerve roots.  (R. 25, 181, 219-20.)  The neural foramina were patent, and there was no evidence of canal stenosis.  (Id.)  As such, the findings of these tests were unremarkable, according to Dr. Anderson.  (R. 176.)

In addition, the ALJ relied on evidence submitted by Dr. Fuller and Dr.

Anderson. Specifically, the ALJ relied on the clinical findings of Dr. Fuller which concluded that Plaintiff's examination was otherwise normal except for tenderness in Plaintiff's lumbar musculature right and left sacroiliac joint.[9] (R. 25-26, 213-16.) Dr. Fuller released Plaintiff to return only as needed and determined that Plaintiff no longer needed any prescription medication. (Id.) Moreover, Dr. Fuller stated that he could not find any objective basis for Plaintiff's stated pain. (Id.)

The ALJ further based his pain and credibility analysis on the clinical findings of Dr. Keith Anderson. (R. 25.) Dr. Anderson found Plaintiff had no neurological abnormalities, normal examination and range of motion of his shoulders, elbows, wrists, fingers, hips, knees, and ankles; normal cervical and thoracic spine examination; lumbar area pain to light palpation with decreased range of motion and normal lumbar lordosis; negative straight leg raising in the sitting position but bilaterally positive in the supine position; and that Plaintiff could heel and toe walk. (R. 25, 176- 88.) The ALJ relied on Dr. Anderson's assessment of Plaintiff's limitations in finding that Plaintiff's complaints of pain were not entirely credible. (R. 25, 177.)

---

[9] The sacroiliac joint is the joint in the bony pelvis between the sacrum and the ilium of the pelvis, which are joined together by strong ligaments.

14

b.  Plaintiff's Complaints Regarding Cardiomyopathy

With regard to Plaintiff's alcoholic Cardiomyopathy, the ALJ noted that the record showed that impairment resulted in only mild edema of Plaintiff's lower extremities and was controlled with medication.  (R. 26, 227-82, 319-38.) The ALJ also noted that, although Plaintiff did not seek treatment for three months or take his medication, Plaintiff still had only light pedal edema.  The doctor refilled Plaintiff's prescription  for Lasix to be used "as needed" for edema and gave only a two month supply. (R. 26, 325.)  Dr. Fuller's June 2006 examination of Plaintiff found no varicosities, no edema and full pulses.  (R. 26, 300.) Additionally, Plaintiff was seen four times through January 2007 and on examination, he had no edema and received no further prescription.  (R.  26, 319, 342-44.)  Dr. Long examined Plaintiff four times from November 2006 through February 2007, and Dr. Long did not diagnose any cardiac condition or conclude that Plaintiff was disabled due to any such condition. (R. 26, 342-45.) Therefore, this evidence supports the ALJ's determination that Plaintiff's statements concerning the intensity, persistence and limiting effects of Plaintiff's edema were not credible.  (Tr. 27.)

c.  Plaintiff's Shortness of Breath

Contrary to Plaintiff's argument)with regard to Plaintiff's complaints of shortness of breath (doc. #5 at 26-27), the ALJ properly evaluated the medical

15

evidence of record for several reasons.  First, during Plaintiff's functional capacity testing, the reports made no reference whatsoever to Plaintiff having difficulty breathing or having to stop the testing due to breathing issues. (R. 189-212.) Second, there were only minimal findings on x-rays and other examinations regarding complaints of shortness of breath and certainly nothing to indicate that Plaintiff was disabled in this regard. (R. 250-52, 263-65, 275.) Third, none of Plaintiff's breathing issues have been severe enough to warrant pulmonary function studies, an evaluation by a pulmonologist, or any sort of hospitalization.[10]  Fourth, the frequency and effectiveness of Plaintiff's treatment supports the decision of the ALJ.  For example, while being treated at the Good Samaritan Health Clinic from 2005 until 2007, Plaintiff sought treatment only periodically with large gaps between visits. (R. 320-38.) Although Plaintiff was prescribed an inhaler, he testified that he used the inhaler only "once in a while." (R. 272, 323.)  Finally, the medical records also showed improvement in Plaintiff's breathing issues.  Treatment notes from November 2006 and January 2007 show that Plaintiff's respiratory effort was normal and that he denied any breathing problems. (R. 339-45.) All of the above support the conclusion of the ALJ that Plaintiff's alleged limitations due to breathing problems was not fully

---

[10]  While Plaintiff did go to the emergency room in August 2005 for breathing issues, those issues were the result of pneumonia, not chronic obstructive pulmonary disease. (R. 230.) Plaintiff was advised at the time to quit smoking, which he apparently did. (Id.)

credible.

### d.  Ear Impairment

As to Plaintiff's ear impairment, the ALJ relied on the audiogram testing showing Plaintiff's speech discrimination was basically unaffected at 100 percent in the right ear and 96 percent in the left ear.   (R. 27, 312.)  A CT scan of both ears found that although Plaintiff's left ear had chronic mastoiditis, his right ear was normal.  (R. 309.) In July 2004, Plaintiff underwent left myringotomy with tube placement.  (R. 303.)  Postoperatively, his left ear was improved with better hearing at higher frequencies and better hearing at low frequencies with the right ear.  (R. 302.)

Although Plaintiff cites a September 2004 treatment note showing that an audiogram revealed a PTA right ear 38 and left ear 43, those findings were before Dr. L. Clark Smith scheduled a right tympanoplasty, possible OCR and possible mastoidectomy on October 2004. (R. 302.) The ALJ properly noted that after that time, there were no medical treatment notes documenting complaints of hearing problems, or evidence that Plaintiff exhibited hearing problems, or further diagnoses made of any hearing deficits. (R. 27, 189-282, 300-45.) The ALJ was entitled to consider the lack of further complaints to find that Plaintiff's subjective complaints were not credible.  See Dyer, 395 F.3d at 1211 (upholding the ALJ's pain and

credibility analysis where the ALJ considered, among other things, the frequency of the claimant's symptoms); <u>Johnson v. Bowen</u>, 866 F.2d 274, 275 (8th Cir. 1989) (claimant did not complain of seizures when visiting physicians).  Thus, substantial evidence supports the ALJ decision with regard to Plaintiff's ear impairment.

### e.  Lack of Consistent Medical Treatment

Additionally, in discrediting Plaintiff's subjective complaints of pain, the ALJ notes Plaintiff's lack of consistent medical treatment, especially in recent years.  (R. 26.)  Plaintiff counters by citing his lack of medical insurance and inability to pay for treatment.  (Doc. #5 at 32-33.)   The Eleventh Circuit allows poverty to excuse noncompliance with medications and treatment.  <u>Dawkins v. Bowen</u>, 848 F.2d 1211, 1213.   Thus while a remediable or controllable medical condition is generally not disabling, when a "claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law."  <u>Id.</u> (quoting <u>Taylor v. Bowen</u>, 782 F.2d 1294, 1298 (5th Cir. 1986) (footnote omitted)).

Here, however, the record shows that Plaintiff received medical treatment from the Good Samaritan Health Clinic free of charge from 2005 until 2007, (r. 26, 319-38), and plaintiff admitted such free medical treatment at the hearing and in his brief. In addition, there is no evidence before the court, other than plaintiff's own

18

assertions, to support his lack of ability to pay.  Finally, and most importantly, the lack of ability to pay for medical treatment was not a primary reason the ALJ discredited Plaintiff's subjective complaints of pain, but was merely mentioned a couple of times when referring to Plaintiff's conditions.  (R. 25-31.)

### f.  Plaintiff's Own Statements

Finally, the ALJ relied on Plaintiff's own statements as to his level of pain.  (R. 25, 28.)  For instance, in May 2005 Plaintiff rated his daily pain as only a five out of a scale of ten.  (R. 176.)  Further, during his functional capacity examinations, Plaintiff rated his pain pre-test as a 4 out of 10 and post-test as a 5 out of 10.  (R. 191.)  The ALJ also noted the inconsistencies in Plaintiff's statements regarding the extent of his daily activities.  (R. 28.)  In October 2004, Plaintiff reported that he could  continuously stand 30-45 minutes, continuously walk 30-45 minutes and continuously sit 45 minutes to one hour.  (R. 28, 143. ) He indicated he could take care of his personal grooming without limitations, as well as cook and prepare meals. (R. 28, 143-49.)  Plaintiff stated that he could perform household chores such as cleaning, vacuuming, laundry, making the bed, taking out the trash and yard work, but that he had to take his time doing such activities. (R. 28, 143-49.) He stated that he drove as much as 25 miles before needing to break to walk around, and he shopped but limited himself to lifting 10 pounds at a time.  (R. 28, 143-49.)  The ALJ

noted that at the time Plaintiff indicated he was able to perform these activities, he was also not taking any pain medications. (R. 28, 148.)  Later, in May 2005, Plaintiff reported to Dr. Anderson that he could continuously sit for one hour. (R. 183) These statements and reports to doctors are clearly inconsistent with his testimony at the hearing regarding his complaints of pain, as well as inconsistent with Dr. Long's opinion that Plaintiff has a limited range of daily activities. (R. 29, 299.)  They also support the ALJ's conclusion that Plaintiff's allegations of disabling pain were not fully credible.

In sum, considering all the above,[11] the court concludes that the substantial evidence supports the decision of the ALJ regarding Plaintiff's subjective complaints

---

[11] The court cannot tell from Plaintiff's brief whether he argues that the ALJ improperly evaluated his subjective complaints regarding his hypertension and high cholesterol. However, the ALJ properly concluded that these alleged impairments did not result in any function limitations. (R. 27.) These two conditions were controlled by medication, when Plaintiff was compliant. (R. 319-45.)  For instance, when Plaintiff had an elevated lipid profile in 2005 and 2006, he was noncompliant with his prescribed medications, (R. 321, 323-25, 332, 334, 337), as compared to January 2007, after medication compliance, where Plaintiff's lipid profile was improved with medications being adjusted for better control. (R. 329.)

The same is true regarding Plaintiff's blood pressure.  In January 2006, Plaintiff's blood pressure was elevated at 147/85 due to his noncompliance with medications. (R. 324.) Despite not seeking regular follow-up treatment and medications, his diastolic blood pressure readings have been under 100, (R. 230, 234, 240, 253, 324-25, 343-45), and medications were being adjusted for "better" control in September 2006. (R. 321.) In January 2007, his blood pressure was 145/90 and in February 2007, his blood pressure was 151/101 but the record was consistent with Plaintiff being noncompliant with his medication as his medication was last prescribed in September 2006 with only one refill (R. 320, 321, 323-25, 332, 342.) Additionally, Dr. Long, Plaintiff's family practitioner, did not include hypertension or high cholesterol as an impairment in his January 2007 disability questionnaire in January 2007. (R. 292-96.)

20

of pain.  In addition, the ALJ properly applied the pain standard as articulated by the Eleventh Circuit.

### 2.   Weight of the Medical Evidence

Without explicitly making this argument, Plaintiff implicitly contends throughout his brief to the court that the ALJ gave improper weight to the medical evidence presented.   For instance, Plaintiff argues that the ALJ improperly "primarily" relied on Dr. Anderson's opinion in determining whether Plaintiff is disabled because Dr. Anderson considered only Plaintiff's back impairment.  (Doc. #5 at 19.)   Additionally, Plaintiff contends that the ALJ improperly devalued the opinions of treating physician, Dr. Jeffrey W. Long.  (Id. at 31-32.)   Contrary to Plaintiff's arguments, however, the court finds that the ALJ applied proper legal standards when weighting the evidence submitted, and his conclusions are supported by substantial evidence.

The weight properly afforded to a medical opinion regarding the nature and severity of a plaintiff's impairments depends upon a number of factors, including the source's examining and treating relationship with the plaintiff, the evidence presented to support the opinion, the consistency of the opinion with the record as a whole, and the speciality of the medical source.  See 20 C.F.R. § 416.927(d).  The opinion of a physician, even a treating physician, may properly be discounted for good cause.

21

<u>Crawford v. Comm'r of Soc. Sec.</u>, 363 F.3d 1155, 1159-60 (11th Cir. 2004). Indeed, although a treating physician's opinion is typically given "substantial or considerable weight," that opinion may deserve less weight under the following circumstances: "(1) [the] treating physician's opinion was not bolstered by the evidence; (2) [the] evidence supported a contrary finding; or (3) [the] treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." <u>Phillips v. Barnhart</u>, 357 F.3d 1232, 1240 (11th Cir. 2003) (affirming the ALJ's decision to give little weight to a treating physician's opinion due to several specific contradictions between the physician's opinion and other evidence of record). Nonetheless, if the ALJ has failed to articulate "good cause" for assigning less weight to a treating physicians's opinion, reversible error has occurred. <u>Lewis</u>, 125 F.3d at 1440.

a.  Dr. Keith Anderson's Opinion

Plaintiff contends that the ALJ erred when he "primarily" relied on the opinion of Dr. Anderson in making the disability decision because Dr. Anderson considered only Plaintiff's back impairment. (Doc. #5 at 19.) This argument fails. First, while the ALJ relied on Dr. Anderson's opinion in formulating Plaintiff's RFC, the ALJ took into account a multitude of other factors and opinions other than the one of Dr. Anderson. (R. 24-31.) Second, there is no support in the record that Dr. Anderson's

22

testing focused solely on Plaintiff's back impairment.[12] Dr. Anderson's report details a thorough review of Plaintiff's medical history as well as a detailed review and analysis of Plaintiff's performance during the functional capacity testing and a complete physical examination of the Plaintiff. (R. 49-50.) The mere fact that Dr. Anderson focused on Plaintiff's back impairment does not render his opinion worthless to the ALJ.

The weight afforded to Dr. Anderson's opinion was proper. Dr. Anderson is a specialist in industrial rehabilitation and physical therapy and the medical director of a rehabilitation facility. (R. 49, 188.) He was an examining source who performed a very detailed review of Plaintiff's medical history, as well as Plaintiff's performance on objective functional capacity testing. His opinion is consistent with the objective medical testing which found no evidence of spinal stenosis, impingement or canal compromise at any lumbar level[13]. (R. 179-81, 219-20.) His opinion is also consistent with the clinical findings which showed normal gait and station, neurovascularly intact lower extremities, negative straight leg raising, normal muscle tone, and normal

---

[12] Admittedly, the purpose of Dr. Anderson's examination was to examine Plaintiff's back injury, but the testing reveals that he examined other parts of Plaintiff during his examination.

[13] That Dr. Anderson did not know that a nerve conduction study showed that a nerve at L5 was causing irritation does not change the court's analysis as it was Dr. Fuller, not Dr. Anderson, who stated that he could not find any objective reason for Plaintiff's pain. (R. 41, 176, 179, 218.)

23

strength of all groups.  (R. 179-80, 180-84, 213-17, 222-24.)

Dr. Anderson's opinion is further supported by the opinion of two other physician's, Dr. Fuller and Dr. Stephenson.  Dr. Fuller is a treating orthopedic specialist, who saw Plaintiff on a regular basis from February through June of 2005. He indicated that there was no objective cause to explain Plaintiff's pain.  (R. 218.) Dr. Stephenson, a non-examining board-certified orthopedic surgeon, opined that Plaintiff had the functional capacity to perform medium work, after reviewing all of Plaintiff's treatment history.  (R. 283-90.)  The consistency of these three specialists[14] opinions supports the opinion of the ALJ that Plaintiff is not disabled.

### b.  Dr. Jeffrey Long's Opinion

Contrary to Plaintiff's argument, the ALJ properly gave less weight to the disability opinion of Dr. Jeffrey Long, who concluded that Plaintiff was unable to sustain an eight-hour workday.  (Doc. #5 at 31-32; R. 30, 293-96.)  Although Dr. Long is considered a "treating physician," he is a family medical doctor who made his disability opinion regarding Plaintiff after seeing him one time.  His findings are inconsistent with the bulk of the medical evidence, including the objective testing

---

[14]  This consistency of specialist opinions is contrasted with the opinion of Dr. William Crunk Jr. who does not have any formal medical training, or any access to Plaintiff's medical file. His opinion was based solely on Plaintiff's statements to him during a brief interview.  (R. 298-99.)  The ALJ properly rejected this opinion in favor of the opinions of the treating and examining specialists.  See Crawford, 363 F.3d at 1159-60.

24

evidence, x-ray evidence, and other examination findings.  (R. 30, 179-81, 219-20, 250-51, 293-96, 339-45.)  For example, as noted by the ALJ, Dr. Long's opinion regarding Plaintiff's limitations in his neck and upper extremities is inconsistent with the lack of treatment for those alleged conditions.  (R. 30, 213-82, 294-96, 300-301, 319-38.)  In addition, Dr. Long's opinion contained internal inconsistencies, such as the statement that Plaintiff could not walk one block, as compared to the later statement that Plaintiff could walk for ten minutes as a time with a break.  (R. 30, 293-96.) His opinion was also inconsistent with Plaintiff's own statements regarding his daily activities.  (R. 143-49.)  As such, the ALJ properly rejected the disability opinion of Dr. Long.

### 3.  Consideration of Impairments in Combination

Plaintiff also argues that the ALJ did not properly consider her impairments in combination.  (Doc. #5 at 60-61.)  Social Security regulations require the ALJ to consider the combined effects of all impairments in evaluating disability:

> In determining whether your physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity. If we do find a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability

> determination process. If we do not find that
> you have a medically severe combination of impairments,
> we will determine that you are not disabled.

20 C.F.R. § 404.1523; see Swindle v. Sullivan, 914 F.2d 222, 226 (11th Cir. 1990).

When a combination of impairments exist, a claimant may be found disabled even

though none of the individual impairments by itself would be disabling.  See Caulder

v. Bowen, 791 F.2d 872, 880 (11th Cir. 1986). Reviewing courts can determine that

a claimant's impairments were considered in combination from statements made by

the ALJ. Wheeler v. Heckler, 784 F.2d 1073, 1076 (11th Cir. 1986) (holding that it

was clear that impairments were considered in combination when ALJ stated that

"based upon a thorough consideration of all evidence, the ALJ concludes that

appellant is not suffering from any impairment, *or a combination of impairments* of

sufficient severity to prevent him from engaging in any substantial gainful activity for

a period of at least twelve continuous months.") (internal quotations omitted).

The ALJ's opinion clearly and comprehensively summarizes the evidence

regarding Plaintiff's medical impairments.  (R. 24-31.)  The ALJ found that the vast

majority of Plaintiff's alleged impairments were "severe" and specifically stated that

he considered Plaintiff's impairments in combination when he determined that

Plaintiff's impairments did not meet or equal one of the impairments in Appendix I,

Subpart P, Regulation No. 4, when he determined that Plaintiff retained the residual

26

functional capacity to perform his past relevant work, as well as a significant number of unskilled light jobs in the national economy.  (R. 23, 24-25, 31.)  In addition, the discussion of Plaintiff's RFC by the ALJ clearly illustrates that he considered Plaintiff's impairments in combination, and the hypothetical questions posed to the VE included all Plaintiff's limitations.  (R. 23, 24-25, 369-70.)  Such statements and findings by the ALJ are sufficient to establish that the ALJ considered Plaintiff's impairments in combination.  See Wilson v. Barnhart, 284 F.3d 1219, 1224-25 (11th Cir. 2002); Jones v. Dep't of Health & Human Servs., 941 F.2d 1529, 1533 (11th Cir. 1991).

> *B.  The Appeals Council Erred in Failing to Remand for Consideration of New Evidence.*

Morgan contends that the Appeals Council (AC) erred in failing to remand his case for consideration of new evidence under 42 U.S.C. § 405(g). (Doc. #5 at 32-44.) "Section 405(g) permits a district court to remand an application for benefits to the Commissioner . . . by two methods, which are commonly denominated 'sentence four remands' and 'sentence six remands . . . .'" Ingram v. Comm'r Soc. Sec. Admin., 496 F.3d 1253, 1261 (11th Cir. 2007). When a claimant submits new evidence to the AC, a reviewing court must consider the entire record, including the evidence submitted to the AC, to determine whether the denial of benefits was erroneous.  Id. at 1262.

27

The new evidence must relate back to the time period on or before the date of the ALJ's decision. 20 C.F.R. § 404.970(b).

A sentence four remand is appropriate when "evidence properly presented to the Appeals Council has been considered by the Commissioner and is part of the administrative record." Ingram, 496 F.3d at 1269. A remand under sentence six is "appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." Id. at 1267 (quotations omitted).

Morgan submitted new evidence for the first time to the AC, which the AC considered, and it became part of the administrative record.   The AC specifically stated it "considered the reasons [Morgan] disagree[d] with the decision and the additional evidence listed in the enclosed Order of Appeals Council." (R. 4.)   Thus, the only basis for remanding the case would be a sentence four remand, not a sentence six remand.

The record shows the additional evidence which Morgan submitted consisted of the following: (1) an October 5, 2006 deposition of Dr. Anderson; and (2) a consultative examination, clinical assessment of pain, and medical source statement

(physical) from Dr. Hisham Hakim, all dated June 18, 2007.[15]  The question for the court is whether this new evidence would change the outcome of the ALJ's decision; in other words, the court must decide whether this new evidence is material.  See Hoffman v. Astrue, 259 Fed. Appx. 213, 220-21 (11th Cir. 2007) (unpublished); Hyde v. Bowen, 823 F.2d 456, 459 (11th Cir. 1987) (remanding because new evidence was material when new reports offered an objective medical explanation for previously unexplained subjective complaints of pain and inability to work).

Plaintiff contends that the deposition of Dr. Anderson clarifies and contradicts some of Dr. Anderson's prior statements and findings and that because the ALJ primarily relied on Dr. Anderson's opinion, the ALJ's decision is not supported by substantial evidence. (Doc. #5 at 37-39.)  As the Commissioner correctly notes, however, Dr. Anderson's deposition was taken on October 5, 2006, well before the February 2, 2007 administrative hearing and opinion date. (R. 48, 346, 32.)  Although he was clearly in possession of the deposition at the time of the hearing and before the ALJ rendered his opinion, Plaintiff chose to withhold the deposition from the ALJ and submit it to the Appeals Council.  (R. 10.)  Plaintiff was surely aware of the

---

[15] Although the Commissioner addresses the evidence from Dr. Hakim, the Plaintiff does not address this new evidence in his initial brief or reply brief.  Because the Plaintiff does not make any argument whatsoever to the court that remand is proper for the ALJ to consider this evidence, the court deems this argument abandoned.  See  Sepulveda v. U.S. Att'y Gen., 401 F.3d 1226, 1228 n.2 (11th Cir. 2005).

contradictions about which he now complains before the ALJ rendered his decision,
However, Plaintiff offers no explanation for such withholding, which the court views
as some sort of strategy gone awry, and has a hard time considering such evidence as
"new."

That being said, the court addresses the merits of Plaintiff's claim regarding
this "new" evidence.  Plaintiff contends that Dr. Anderson's deposition shows that
Dr. Anderson failed to consider Plaintiff's heart problems and did not consider other
key pieces of evidence in making his disability determination, a determination heavily
replied upon by the ALJ, according to the Plaintiff.  (Doc. #5 at 36-39.)  The court
disagrees for the simple reason that the ALJ considered the items apparently not
considered by Dr. Anderson.

As to Plaintiff's hypertension and heart problems, the ALJ considered both.  He
specifically noted and considered Plaintiff's hypertension (R. 27), and noted the
October 2005 Doppler study which showed that Plaintiff had mild pulmonary valve
regurgitation.  (R. 26, 28.)  Additionally, the ALJ properly relied upon the opinion of
Dr. Stephenson that these diagnoses and findings did not render Plaintiff incapable
of performing medium (or light) work.  (R. 30, 228, 290.)  Consequently, even if Dr.

Anderson somehow changed his prior opinion based on these conditions,[16] the ALJ had other, additional evidence demonstrating that Plaintiff could work despite them. And, importantly, the record indicated that despite the pain Plaintiff claimed to be having during the functional capacity evaluation, he was noted as <u>magnifying</u> his symptoms. (R. 177.) Moreover, not one doctor has opined that Plaintiff is further limited because of any cardiovascular impairment. Because the ALJ considered the evidence Plaintiff contends Dr. Anderson did not consider, there is no reason to believe that Dr. Anderson's deposition would change the opinion of the ALJ, and remand is not warranted.

## VI.  CONCLUSION

The court concludes that the determination of the ALJ that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The final decision of the Commissioner, therefore, is

---

[16] The court is not convinced that the deposition of Dr. Anderson actually changes his overall opinion based on these conditions.

31

due to be affirmed.  A separate order in accordance with this memorandum of opinion will be entered.

     **DONE** this the   9th   day of March, 2010.

                                    _____

                             SENIOR UNITED STATES DISTRICT JUDGE